UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SILA NUNEZ,

        Petitioner,

v.                                                  Case No.:  2:18-cv-708-FtM-38NPM
                                                                        2:17-cr-87-FtM-38MRM-2

UNITED STATES OF AMERICA,

        Respondent.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Petitioner Sila Nuñez's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1, Motion),[2] to which the Government filed a Response with exhibits (Doc. 8, Doc. 8-1, Doc. 8-2). Nuñez filed an unsigned Counterclaim to the Government's Response (Doc. 10). The Court struck the unsigned Counterclaim and afforded Nuñez an opportunity to refile a proper pleading under penalty of perjury (Doc. 15). After being directed by the Court (Doc. 12), the Government filed a Supplemental Response to the Motion with exhibits, including the sworn affidavit of defense counsel, Ms. Zena X. Duncan, Duncan's handwritten notes, and letter written by Nuñez to Duncan after sentencing. (Doc. 14, Doc.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.
[2] The Court refers to the docket in the instant case as "Doc." and Nuñez's underlying criminal docket at 2:17-cr-87-FtM-38CM as "Cr. Doc."

14-1, Doc. 14-2).³ The Court allowed Nuñez to respond to Duncan's affidavit. (Doc. 15). Instead, Nuñez filed a Reply to the Government's Response. (Doc. 16). Based upon the pleadings and record the Court denies the Motion.

## BACKGROUND

On August 2, 2017, a federal grand jury in Fort Myers returned a three-count indictment against Sila Nuñez and her husband Jose. (Cr. Doc. 24). Count One charged Nuñez and her husband with conspiring to distribute and to possess with intent to distribute cocaine in violation of Title 21 U.S.C. §§ 846 and 841(b)(1)(A). (Cr. Doc. 24). Count Two charged Nuñez and her husband with attempted possession with intent to distribute cocaine in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and Title 18 U.S.C. § 2. (*Id.*). Count Three charged Nuñez and her husband with possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and Title 18 U.S.C. § 2. (*Id.*). On October 27, 2017, Nuñez executed a written plea agreement pleading guilty to Count One of the Indictment (Cr. Doc. 46) and filed a Notice of Entry of Guilty Plea, Consent, and Waiver of Objection to Report & Recommendation (Cr. Doc. 49). On November 7, 2017, Nuñez entered her plea of guilty to Count One at her Change of Plea Hearing. (Cr. Doc. 57; Cr. Doc. 109). The Court accepted her guilty plea and she was adjudicated guilty. On March 19, 2018, the Court sentenced Nuñez' on Count One and dismissed Counts Two and Three. (Cr. Doc. 88). The Court sentenced Nuñez to 87 months in prison, which was at the low-end of the guidelines range.⁴ (*Id.*). Judgment was entered on March 22, 2018. (Cr. Doc. 92). Nuñez did not file a direct appeal of her

---

[3] The Government included a certified transcription of the documents because the documents were in Spanish. (Doc. 14-2).
[4] The sentencing guidelines placed Nuñez at a level 29 and criminal history category of 1. The guideline imprisonment range was 87-108 months.

conviction and sentence. Nuñez filed this Motion on October 22, 2018. The Government states the Motion is timely and the Court agrees.

## DISCUSSION

### A.     Grounds Presented for Review

Liberally construed, Nuñez raises these grounds for relief in her Motion: (1) erroneous advice induced Nuñez to accept the plea agreement; (2) Nuñez' right against self-incrimination was violated and her plea was made under duress; (3) Nuñez' conviction violated the Uniform Commercial Code ("UCC"); (4) the Court lacked jurisdiction and Nuñez' sentence exceeded the statutory maximum; (5) the prosecutor breached the plea agreement; (6) Nuñez was improperly denied a downward departure for her cooperation and diminished mental capacity; and (7) counsel was ineffective for failing to file a notice of appeal despite Nuñez's request to appeal. (Doc. 1).

In her Reply, Nuñez alleges that counsel's conduct fell below an "ethical standard," and appears to attribute further ineffectiveness to counsel for "mis-judgment on presentencing report," not seeking dismissal of the indictment and not challenging "selective prosecution." (Doc. 16 at 2-3). The Court recognizes no arguments or claims raised for the first time in Petitioner's Reply to the Government's Response. See Wilson v. United States, No. 16-15133-E, 2017 WL 3225903, at *1 (11th Cir. Feb. 23, 2017), *cert. denied*, 138 S. Ct. 196, 199 (2017) (holding that a claim not raised until the petitioner's reply brief was "not properly before the district court" and instead considered an improper amendment to his § 2255 motion.). To the extent these claims preceded the entry of Nuñez' guilty plea they are barred. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

**B.     Evidentiary Hearing and Appointment of Counsel**

The governing statute requires the Court to hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "If the petitioner alleges facts, that if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir 2017) (quoting *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002)). A petitioner need only allege, not prove, facts that would entitle him to relief. *Id.* However, the alleged facts must be reasonably specific, non-conclusory facts. *Aron v. United States*, 291 F. 3d 708, 715, n. 6 (11th Cir. 2002); *see also Allen v. Sec'y, Fla. Dep't of Corrections*, 611 F.3d 740, 745 (11th Cir. 2010), *cert. denied*, 563 U.S. 976 (2011)(The court does not have to hold a hearing where the claims are "conclusory allegations unsupported by specifics."). Further, if the allegations are "affirmatively contradicted by the record" and "patently frivolous," the court is not required to hold an evidentiary hearing. *Id.*

The Government argues none of the grounds in Nuñez's Motion have merit. (Doc. 8 at 5-11). Regarding counsel's failure file a notice of appeal (Ground Seven), the Government points out Nuñez alleged no facts in support of her claim. (Doc. 8 at 10). Then Nuñez filed an unsigned pleading titled "Counterclaim" alleging she requested Zena Duncan, her counsel, to appeal her conviction after sentencing "due to my plea agreement not being what we agreed on." (Doc. 10 at 3). Based on these allegations, the Court ordered the Government to file a Supplemental Response and an affidavit from Duncan. (Doc. 12). However, because Nuñez did not sign her Counterclaim under penalty of perjury, the Court struck the Counterclaim but allowed Nuñez to resubmit a

4

supplement to her Motion under penalty of perjury and required by 28 U.S.C. § 1746.[5] (Doc. 15). The Court specifically directed Nuñez she "must insert at the end of her pleading above her signature the following: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct." (*Id.* at 2, n. 2). And, the Court warned Nuñez of the implications of filing a perjured pleading. (*Id.* at 3.) The Court also directed Nuñez in her sworn supplement to respond to each of the factual allegations in Duncan's sworn affidavit and provide details of her request to file an appeal. (*Id.* at 2-3). The Court further warned:

> If Nuñez fails to timely file the Sworn Statement under penalty of perjury, the Court **will accept the statements in the attorney's affidavit (**Doc. 14-1**) as stipulated and agreed to by Nuñez**, and the Court may dismiss her corresponding ineffective assistance of counsel claim regarding the filing of an appeal.

(*Id.*, emphasis added). Nuñez elected not to refile a supplement to her Motion or a submit a Sworn Statement under penalty of perjury as directed by the Court but instead filed a Reply incorporating a "Declaration of Facts." (Doc. 16, *id.* at 4). The Reply, although signed by Nuñez, is not signed under penalty of perjury. (*Id.* at 4). Nuñez does not dispute or address the statements by Duncan in her affidavit. *See generally* (*Id.*). Thus, the Court accepts Duncan's sworn statements as stipulated to and agreed to by Nuñez.

The Court finds the undisputed facts in the record before the Court demonstrate Nuñez did not request counsel to file an appeal. The Court further finds Nuñez's remaining grounds are similarly either conclusively refuted by the record or procedurally barred. The Court finds an evidentiary hearing is not needed.

---

[5] The Court liberally construed the Counterclaim as a supplement to the § 2255 Motion. (Doc. 15 at 1).

Because Petitioner's motion for an evidentiary hearing is denied, appointment of counsel is not required under Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Court. Neither the interest of justice nor due process requires the appointment of counsel here. See *Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006) (stating there is no Sixth Amendment right to counsel in post-conviction collateral proceedings); *see also Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("Counsel must be appointed for an indigent federal habeas petitioner only when the interest of justice or due process so require.").

## ANALYSIS

### 1. Ground One

Nuñez claims "erroneous advice" induced her into accepting the plea agreement. In support, Nuñez asserts she "was rushed" into accepting the plea "without knowing there would be a conflict of interest." Nuñez alludes to the promise of a 60-month sentence if she plead and claims she was never informed that the judge could "sentence her between the two different offers." (Doc. 1 at 4). In her Reply, Nuñez appears to refute that her plea was knowing and voluntary because she is bi-polar and was not taking medications for her "serious mental health issues" and has a "diminish[ed] capacity." (Doc. 16 at 4, ¶¶ 1-2). The Government responds Ground One is without merit and refuted by the record. (Doc. 8 at 6-7).

Initially, the Court finds the record conclusively shows that Nuñez entered both a *knowing* and *voluntary* guilty plea. Mr. Fontova, a court appointed translator was present during the plea colloquy. (Cr. Doc. 109 at 3). At the inception of the hearing the Court told Nuñez that the purpose the proceedings was for the Court to determine whether her

plea was voluntary and knowing, she could privately consult with her attorney at any point during the hearing if she did not understand anything or had questions, and she could interrupt the court if she needed an explanation for any question. (*Id.* at 4-5). Nuñez confirmed she understand the Court's instructions. (*Id.* at 5). After being sworn, the Court reiterated the importance of entering a guilty plea:

> THE COURT: All right. Miss Nuñez, also, before I continue, I want to explain to you that if, at the end of the hearing, you decide to enter a plea of guilty to Count 1, and your plea is accepted by the Court, then it will become very difficult, if not impossible, for you to later change your mind. Do you understand that, ma'am?
>
> THE DEFENDANT (Via Interpreter): Yes, ma'am.

(*Id.* at 6). Nuñez' recently claimed mental incapacity is refuted by her sworn statements at the plea colloquy.

> THE COURT: Have you ever been treated for or suffered from any mental or emotional disease or illness?
>
> THE DEFENDANT (Via Interpreter): No, ma'am.
>
> THE COURT: To your knowledge, are you now suffering from any mental or emotional disease or illness?
>
> THE DEFENDANT (Via Interpreter): I'm bipolar.
>
> THE COURT: All right. Are you taking medication for that disorder?
>
> THE DEFENDANT (Via Interpreter): No, ma'am.
>
> THE COURT: Okay. Does that impact your ability to think clearly today?
>
> THE DEFENDANT (Via Interpreter): No.
>
> THE COURT: Do you know what's going on today?
>
> THE DEFENDANT (Via Interpreter): Definitely, yes.
>
> THE COURT: All right. Miss Duncan, do you have any concerns about Miss Nuñez's competency to enter a plea today?

7

> MS. DUNCAN: No, Your Honor.
>
> THE COURT: And, Mr. Leeman, do you have any other questions that you'd like the Court to ask regarding competency?
>
> MR. LEEMAN: No, Your Honor. Thank you.
>
> THE COURT: All right. All right, Miss Nuñez, then I do find you competent to enter a plea of guilty today if you choose to do so.

(*Id.* at 8-9). Thus, the record conclusively refutes Nuñez's newly raised claims she lacked the mental capacity to enter a guilty plea.

Regarding her potential sentence, Nuñez executed a written Plea Agreement which plainly states the minimum and maximum penalties: "Count One is punishable by a mandatory minimum term of imprisonment of ten years up to life in prison." (Cr. Doc. 46 at 1). Nuñez' initials appear at the bottom of each page of the Plea Agreement. The Plea Agreement contains the "entire agreement" and states "no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea." (*Id.* at 22). And, at the plea colloquy Nuñez stated the Plea Agreement had been translated for her, her attorney had answered all questions, and she understood every part of the agreement. (Cr. Doc. 109 at 20). The Court then again told Nuñez of the potential penalties, 10 years to life, and Nuñez stated she understood them. (Cr. Doc. 109 at 21). Nuñez confirmed no one made her any other promises:

> THE COURT: Other than what is in your plea agreement, has anyone made any promises or assurances to you, of any kind, to induce you to plead guilty?
>
> THE DEFENDANT (Via Interpreter): No, ma'am.

> THE COURT: Other than what is in your plea agreement, are you relying on any agreement, discussion, promise, or understanding with anyone concerning what sentence will be imposed if you plead guilty?
>
> THE DEFENDANT (Via Interpreter): No, ma'am.
>
> THE COURT: At this time, do you know what sentence you will receive?
>
> THE DEFENDANT (Via Interpreter): No, ma'am.
>
> THE COURT: Other than what is in your plea agreement, has anyone promised that you will receive a light sentence or otherwise be rewarded for pleading guilty?
>
> THE DEFENDANT (Via Interpreter): No, ma'am.

(*Id.* at 31-32). The Court then found that Nuñez freely, voluntarily, knowingly and intelligently pled guilty. (*Id.* at 34).

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Nuñez does not identify who allegedly rendered the "erroneous advice" or the nature of the "conflict of interest" in Ground One. Both the written Plea Agreement and Nuñez' statements made under oath during the plea colloquy refute her claim she was offered a sentence of 60 months. Nuñez does not meet her "heavy burden" to prove her statements were false. *See Monsegue v. United States*, 2018 WL 6979305, at *2 (11th Cir. July 17, 2018) (*citing United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)). Based upon the signed plea agreement and Nuñez's statements made under oath at the plea colloquy, the Court finds Nuñez's claims she had a mental defect or diminished capacity, was misled about the potential term of her incarceration or coerced into pleading baseless. *Winthrop-Redfin v. United States*, 767 F.3d 1210, 1216-17 (11th

Cir. 2014) (finding alleged threats to plead guilty undermined by signed plea agreement and statements made at plea colloquy).

In passing, Nuñez also claims there was "an error in the application of the sentencing guideline" and states she should have had "all of the factors of the new guideline and two points for mitigating." (Doc. 1 at 4).  Nuñez does not expand on what factors entitled to her to a further mitigation of her sentence.  Nuñez advanced a similar argument in her Motion for Modification of Term of Imprisonment. (Cr. Doc. 95).  The Court denied her claim finding Nuñez was sentenced under the appropriate guideline's and already received the benefit of the reduction she sought. (Cr. Doc. 99 at 1-2).  To the extent necessary, the Court incorporates its reasoning in its July 12, 2018 Order denying Nuñez this same relief.  *See* (Cr. Doc. 99).  Based upon the forgoing, the Court finds Ground One is refuted by the record and otherwise is without merit.

### 2.  Ground Two

Nuñez claims her conviction violated her right against self-incrimination and/or the prosecutor engaged in misconduct. (Doc. 1 at 5).  Nuñez supplies no facts to support this Ground other than generally claiming her "confession" resulted from duress by the prosecutor.  Although Nuñez uses the term "self-incrimination," it appears she is referring to her allocation of the factual predicate of the crime during the plea colloquy.  The record conclusively refutes any claim by Nuñez she was under duress to plead guilty.  To the extent Nuñez is challenging any communications with law enforcement, such a claim is procedurally barred because the claim was waived by her Plea Agreement.  "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can

be sustained." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992). Thus, when a § 2255 motion is filed collaterally challenging convictions obtained pursuant to guilty pleas, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). The Court finds Ground Two factually deficient, refuted by the record and otherwise without merit.

### 3. Ground Three

Nuñez claims her conviction violated the Uniform Commercial Code (UCC), specifically § 1-308 and § 2-302.[6] (Doc. 1 at 7). The UCC is not a law but a proposed model code to promote uniformity in commercial transactions, not criminal plea agreements. Even if the Court liberally construes the claim to suggest the Plea Agreement is unconscionable, Nuñez does not identify how either the Agreement or any specific clause is unconscionable. This conclusory assertion fails to meet the heightened pleading standard in § 2255 motions. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). Thus, the Court finds Ground Three is facially insufficient and otherwise without merit.

### 4. Ground Four

Nuñez claims her sentence exceeded the statutory maximum. (Doc. 1 at 8). The Government responds this ground is frivolous. (Doc. 8 at 8). The Court agrees. Both the written Plea Agreement and the Court at the change of plea hearing informed Nuñez that the minimum and maximum statutory penalties applicable to the charged offense was ten years to life in prison. (Cr. Doc. 46 at 1-2; Cr. Doc. 109 at 16, 21). The Court

---

[6] Section 1-308 captioned "Performance or Acceptance Under Reservation of Rights" governs the right of a party to continue to perform a contract despite a dispute by qualifying their action as "without prejudice" or like wording. Section 2-302 captioned "Unconscionable Contract of Clause" permits the court as a matter of law to refuse to enforce a contact or the specific offending clause to avoid an unconscionable result.

sentenced Nuñez to 87 months in prison, well below the statutory minimum and maximum. The Court finds Ground Four frivolous, refuted by the record and otherwise without merit.

### 5. Ground Five

Nuñez claims prosecutorial misconduct based on the prosecutor's alleged breach of the plea agreement in violation of the Fifth Amendment due process clause. (Doc. 1 at 14). Nuñez provides no facts to support this Ground.[7] Nuñez does not identify what conduct the prosecutor is alleged to have done improperly. This conclusory claim fails to meet the heightened pleading requirements for § 2255 and is thus facially insufficient. Under § 2255's heightened pleading standard, a petitioner's "allegations must be factual and specific, not conclusory." *Chavez*, 647 F.3d at 1061; *see also Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). The Court denies Ground Five as facially insufficient and without merit.

### 6. Ground Six

Nuñez claims the Court miscalculated her guideline range and argues certain mitigating factors called for a downward departure. (Doc. 1 at 14). Specifically, Nuñez asserts that she "should have been [given] the points off from her cooperation" and she has a diminished mental capacity. (*Id.*). Nuñez's contention is refuted by the record because she did receive a three-point downward adjustment for acceptance of responsibility under the Plea Agreement. (Cr. Doc. 46 at 4). Nuñez was sentenced below the statutory maximum and does not allege, yet alone demonstrate that her sentencing

---

[7] To the extent Nuñez predicates this Ground on her previous allegation that she was promised a 60-month sentence and received an 87-month sentence, he Court previously found the record refutes the notion that Nuñez was promised anything other than what was in the Plea Agreement, so her sentence did not breach the Agreement.

12

resulted in a fundamental miscarriage of justice.  A § 2255 proceeding is not proper to review "freestanding" claims of guideline miscalculations because such claims do not render a petitioner's detention "unlawful" to grant § 2255 relief.  *Spencer v. United States,* 773 F.3d 1132, 1144 (11th Cir. 2014).  As far as her claim she has a diminished mental capacity, the Court found that Nuñez was competent and freely, voluntarily, knowingly and intelligently pled guilty.  (Cr. Doc. 109 at 34).  Thus, the Court finds that Ground Six is refuted by the record and without merit.

### 7. Ground Seven

Last, Nuñez claims defense counsel was ineffective because counsel did not file a notice of appeal as she requested.  (Doc. 1 at 14).  Nuñez in her Motion makes only a barebones assertion that her counsel, Zena Duncan, did not file an appeal despite her request.[8]  (Doc. 1 at 14).

It is undisputed that Duncan did not file a notice of appeal on Nuñez's behalf.  In the context of counsel's failure to file an appeal, a petitioner has two ways to establish that his attorney acted in a professionally unreasonable manner.  *Roe v. Flores-Ortega,* 528 U.S. 470, 478 (2000).  The petitioner can either show that counsel "fail[ed] to follow the defendant's express instructions with respect to an appeal" or that, absent specific instructions from the petitioner, there was reason to believe that "a rational defendant would want to appeal."  *Id.*  Under the prejudice prong, "prejudice is presumed" when counsel fails "to file an appeal that the defendant wanted filed."  *Gomez-Diaz v. United States,* 433 F.3d 788, 792 (11th Cir.2005) (citing *Roe,* 528 U.S. at 483).  Thus, to satisfy

---

[8] The § 2255 Motion template prompts a petitioner to list supporting facts for each ground.  Nuñez listed Ground Seven on a separate piece of paper.  Nuñez nonetheless understood that each ground still required supporting facts because other grounds listed on the same page includes the words "Facts" and then lists supporting facts.

the prejudice prong "a defendant who shows that his attorney has ignored his wishes and failed to appeal his case need only demonstrate that, but for the attorney's deficient performance, he would have appealed." *Id.*

In its Supplemental Response, the Government submits Duncan's sworn affidavit. (Doc. 14-1 at 2-5). The affidavit attaches notes taken by Duncan during a presentencing meeting with Nuñez and a letter sent by Nuñez to Duncan after sentencing. (*Id*. at 6, 9-11). Because the notes and letter are in Spanish, the Government includes a certified translation from Spanish to English. (Doc. 14-2). Pertinent here, Duncan states she counsels every client adjudged guilty of their right to appeal, "even where that right may be circumscribed by provisions of a plea agreement." (Doc. 14-1 at 2). Duncan explains the case's procedural history and attests to Nuñez's eventual acceptance of the plea agreement. (*Id.*). She confirmed she explained to Nuñez the appellate waiver provision in the plea agreement and Nuñez understood it. (*Id.*). The November 7, 2017 plea colloquy corroborates that Nuñez understood her limited rights to appeal. (Cr. Doc. 109 at 24-25). Duncan explains that she met with Nuñez on March 14, 2018 to discuss the final Presentence Investigation Report (PSR), which calculated Nuñez's guideline range between 87-108 months. (Doc. 14-1 at 3). Counsel's "informed opinion" was that Nuñez would likely receive a sentence at the low end of the guideline range, may earn a year off her sentence is she participated in a drug treatment program and would receive credit for the time she served while awaiting sentencing resulting in a further period of incarceration of 5.5 years from sentencing. (*Id.*). Duncan's handwritten notes of the March 14, 2018 meeting reflect the calculations and are consistent with her statements. (Doc. 14-2 at 4). At the March 19, 2018 sentencing, the Government argued for a mid-guideline range of

95 months and Duncan argued for below guidelines range citing Nuñez's health and cooperation. (Doc. 14-1 at 4). Duncan concedes that Nuñez "was not happy" after being sentenced to 87-months imprisonment but "at no time after sentencing" did Nuñez state or indicate she wished to appeal. (*Id.* at 4). Within the fourteen-day appeal window, two of Nuñez's family members contacted Duncan. (*Id.*). Nuñez's sister-in-law called and asked whether "anything further" could be done and Duncan explained that the sentence was at the low end of the guidelines and did not fall within an exception to the appellate waiver. (*Id.*). The caller neither indicated she was calling on behalf of Nuñez nor relayed that Nuñez wanted to appeal. (*Id.*). Instead, Duncan's "impression from the call [was] that the caller was simply a family member checking on the status of the case to see if there was anything or new law that could go into effect that would help Sila with her sentence." (*Id.*). Nuñez's daughter next called Duncan to inquire whether Duncan knew why Nuñez was being transferred to Michigan State jail for pending charges there. (*Id.*). Again, Nuñez's daughter did not request an appeal on Nuñez's behalf. (*Id.* at 5). In May 2018, Nuñez sent a letter to Duncan which neither requested an appeal nor inquired about the status of an existing appeal. (*Id.*). Duncan attaches a copy of the letter to her affidavit. (Doc. 14-1 at 9-11; Doc. 14-2 at 5-10). Nuñez complains about the fact that she has not yet been transferred to a federal prison, criticizes her medical care in the county jail and asks for Duncan's "help" to effectuate her transfer to a federal prison. (Doc. 14-2 at 8). Nuñez acknowledges her 87-month sentence but does not mention an appeal. (*Id.* at 8-9).

*Infra*, the Court allowed Nuñez to respond to Duncan's affidavit. (Doc. 15). Nuñez chose not to respond. *See generally* (docket). Nor does Nuñez in her Reply to the

Supplemental Response address or dispute Duncan's statements. *See generally* (*Id.*). Thus, the Court accepts the statements by Duncan "stipulated and agreed to by Nuñez." (Doc. 15 at 3, ¶ 1). In her Reply, Nuñez claims there are "errors" in the sentencing transcript and suggests the transcript proves she requested her attorney to file an appeal at the sentencing. (Doc. 16 at 1, 4). Nuñez states she informed Duncan she wanted to appeal at the sentencing hearing to challenge the indictment because "the agent brought the drugs to her home and made her part of the operations in the unknown drug sting." (*Id*. at 3, 4). Nuñez implies that, right after the Court advised her of her right to appeal and she was entitled to counsel to assist in her appeal, she told Duncan she wanted to appeal and points to page 44, line 19 of the sentencing transcript as proof she requested counsel to file an appeal. (*Id*. at 4, ¶ 4). The sentencing transcript does not support Nuñez's claim. *See generally* (Cr. Doc. 106). The Court's pronouncement of sentencing starts at page 35. (Id. at 35). After pronouncing sentence, the Court advised Nuñez of her right to appeal at page 42. (*Id*. at 42). The Court then asked counsel if there was anything else for the Court to address and Duncan requested the Court to recommend placement for Nuñez at a specified federal facility. (*Id*. at 43). In response to the Court's question as to what connections to the area Nuñez had, Nuñez responded "None other that [sic] I would like to learn English, I would like to work hard and so that the day that I get out I can be a good person." (*Id.*). Duncan then argued for placement citing Nuñez's medical conditions, but the Court rejected making a recommendation to a specific facility noting her family connections. (Id. at 43-44) When the Court changed the subject to sealing those portions of the sentencing containing argument on the substantial assistance, Duncan stated "I'm sorry, Judge, I half heard what you said because she was

16

in my ear." (*Id.* at 44). Thus, Nuñez did not approach counsel immediately after the Court advised of her of her right to appeal. Instead she approached counsel after the Court denied defense counsel's request to make a recommendation for Nuñez's preferred placement. Based upon Duncan's uncontested and detailed sworn statement as corroborated by the exhibits, the Court finds Nuñez was well-informed of her right to appeal, and even though she was unhappy with her sentence, she never stated nor indicated to Duncan she wished to appeal. If Nuñez had, it is likely that her family members would have asked Duncan about the status of such an appeal when they telephoned counsel. Even more likely is that Nuñez herself would have asked Duncan about the progress of her appeal in her May 2018 letter. Here the record contains no allegations which conflict with Duncan's statements in her affidavit. *Hurtado v. United States*, 808 F. App'x 798 (11th Cir. 2020). The Court denies Ground Seven as refuted by the record and without merit.

Accordingly, it is now

**ORDERED**:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.

2. The Clerk will enter judgment, terminate any pending motions and deadlines, and close this case.

3. The Clerk will file a copy of this Opinion and Order in the corresponding criminal file at case number 2:17-cr-87-38MRM-2 and terminate any pending motions.

**IT IS FURTHER ORDERED: A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a

writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. See 28 U.S.C. § 2253(c)(1); see also Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (citations omitted). Petitioner has not made the requisite showing. Finally, because Petitioner may not have a certificate of appealability, she may not appeal *in forma pauperis*.

**DONE** and **ORDERED** in Fort Myers, Florida this 3rd day of July 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record